UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RVW PRODUCTIONS CORPORATION and RVW FILMS, LLC,<br><br>Plaintiffs,<br><br>-against-<br><br>JOHN LEVIN, ROBERT DISCOLO, RIVER PARTNERS CAPITAL MANAGEMENT LP, LEVIN CAPITAL STRATEGIES LP, JOHN LEVIN & COMPANY, ZACHARY TARICA, FOREST ROAD COMPANY LLC, JOHN AND JANE DOES 1-10, and ABC ENTITIES 1-10,<br><br>Defendants | **Case No.:: 1:18-cv-7674**<br><br>**COMPLAINT** |

## COMPLAINT

RVW Productions Corporation ("RVW Productions") and RVW Films, LLC ("RVW Films," collectively "Plaintiffs"), through their attorneys, Smith + Schwartzstein LLC, hereby state the following as and for its Complaint again John Levin, Robert Discolo, River Partners Capital Management LP ("River Partners"), Levin Capital Strategies LP ("Levin Strategies"), John Levin & Company ("Levin Co.," collectively with River Partners, Levin Strategies, and Levin Management the "Levin Companies"), Zachary Tarica, Forest Road Company LLC ("Forest Road"), Jane and John Does 1-10, ABC Entities 1-10 (collectively "Defendants"):

1

## THE PARTIES

1. Plaintiff RVW Productions Corporation is a Louisiana corporation engaged in the business of producing movies, including the movie at issue here (the "Movie"). Its principle place of business is Louisiana, and it has the exclusive rights to a Louisiana tax credit related to the Movie.

2. Plaintiff RVW Films, LLC is a Delaware limited liability company with its principle place of business in Mount Kisco, New York, engaged in the business of writing scripts for films, including the Movie.

3. Upon information and belief, Defendant John Levin is an individual who resides in New York, New York, and is a principle of River Partners Capital Management LP, Levin Capital Strategies LP, Transamerica Funds – Transamerica Large Cap Value, and John Levin & Company (collectively the "Levin Companies").

4. Upon information and belief, Defendant Robert Discolo is an individual who resides in New York, New York, and is a principle of one or more of the Levin Companies.

5. Upon information and belief, Defendant River Partners Capital Management LP is a New York corporation with its principle place of business in New York, New York, engaged in the business of private fund management.

6. Upon information and belief, Defendant Levin Capital Strategies LP is a New York limited partnership with its principle place of business in New York, New York, engaged in the business of investment management.

7. Upon information and belief, Defendant John A. Levin & Company is a New York corporation with its principle place of business in New York, New York, engaged in the business of investment management.

8. Upon information and belief, Defendant Zachary Tarica is an individual who resides in New York, New York, and is a principal of Defendant Forest Road Company LLC.

9. Upon information and belief, Defendant Forest Road Company LLC is a New York limited liability company with its principle place of business in Hewlett, New York, engaged in the business of lending money.

10. At all relevant times herein, defendants John and Jane Does 1-10 are yet to be identified individuals.

11. At all relevant times herein, Defendants ABC Entities 1-10 are yet to be identified corporate entities.

## JURISDICTION AND VENUE

12. There is diversity of parties here such that jurisdiction in Federal Court is appropriate.

13. Further, several of the Defendants are New York, New York residents or have a principle place of business in New York, New York. Therefore, the Southern District of New York has jurisdiction in this matter.

## NATURE OF ACTION

14. RVW Production is making a movie tentatively called "1973" in Louisiana on a controversial subject (the "Movie"). RVW Productions employs over a thousand people related to the Movie, most of whom are on hourly wages. These employees rely on

RVW Productions for their livelihood, especially considering that their jobs with RVW Productions are temporary. Any disruption in the payment of their wages has a significant effect on their lives.

15. All employees are exclusive to the production and cannot take other work as a result. Most employees are union members, as the company is also a union signatory. Late payment on their wages puts the company in violation of union rules and jeopardizes its signatory status. The employees consist of construction workers, electricians, craftsmen, and other skilled labor, as well as movie production personnel and extras. The equity investors in the company are the majority shareholders.

16. Cathy Beckerman is the principle of RVW Productions in charge of the Movie, but there are several individuals and corporate entities that have an ownership interest in RVW Productions. The co-writer of the script for the Movie and one of the producers of the Movie, employed as SAG actor with RVW Productions (the "Producer"), was thrust into this action.

17. The Producer has extensive contacts, including with Defendant John Levin, whom he has known for many years. Mr. Levin has numerous investments in a wide variety of assets.

18. As such, on April 7, 2018, at the request of Ms. Beckerman, the Producer contacted Mr. Levin via telephone about being an equity investor in the Movie. Mr. Levin told the Producer, as witnessed by Ms. Beckerman, that he would never invest in the Movie "because his wife would kill him" due to the perceived political leanings of the subject matter.

19. Despite this, Mr. Levin requested an investment deck and the script for the Movie, ostensibly because he was "curious." Both were sent to him via email on April 8, 2018.

20. RVW Productions ultimately obtained the equity and/or commitments they needed from other major family offices like the Prince and Mercer families, based on its industry standard finance plan.

21. Per RVW Production's finance plan, RVW Production had to seek a loan against the Louisiana tax credit offered. This is customary and standard for all movies in production in Louisiana.

22. Some of the equity committed to the movie was contingent on the company closing a loan against said tax credit, which is customary and standard for equity in a film. The post production financing loan was also contingent on the tax credit loan being in place.

23. As such, in or about May of 2018, completely separate from any attempts to get funding from Mr. Levin, RVW Productions sought tax credit funding for the production of the Movie from Forest Road.

24. Over the course of the next few weeks, Ms. Beckerman of RVW Productions and Zachary Tarica of Forest Road negotiated the terms of the loan (the "Loan"), which was a loan on the tax credit from the State of Louisiana related to the Movie.

25. RVW Productions and Forest Road came to an agreement on the terms of the Loan, and a closing was scheduled. Plaintiffs, needing the funding from the Loan to complete production and to close on the remainder of the equity funding, prepared for

weeks in anticipation of the Loan money being available based on the representations given and the documents exchanged between the parties.

26. Throughout the period of May 22, 2018 through June 29, 2018 Mr. Tarica repeatedly re-affirmed Forest Road's commitment to the Loan.

27. During a meeting with Zachary Tarica on May 22, 2018, at the Law offices of Fishman Haygood and in the presence of William French, Mr. Tarica discovered that the Producer knew Mr. Levin and Defendant Robert Discolo. Mr. Tarica then told Plaintiffs that Mr. Levin and Mr. Discolo and the Levin Companies were the majority investors in Forest Road.

28. The Producer, who attended this initial meeting only to observe, was told that Forest Road had to notify Mr. Levin, a majority shareholder of Forest Road, of the Producer's involvement given the Producer's personal relationship with Mr. Levin, even though the Producer was only minimally involved with the negotiation of the Loan.

29. Mr. Tarica reaffirmed Mr. Levin's shareholder status numerous times on the phone and in emails during May and June of 2018, up to and including on June 29, 2018, the day after the Loan was supposed to close.

30. However, Plaintiffs were told by Mr. Discolo, including by way of emails on June 28, 2018, that neither he nor Mr. Levin individually, nor any of their entities or trusts, were investors in Forest Road. Mr. Levin also told Plaintiffs he was not an investor in Forest Road, and in fact told them he had never heard of Forest Road.

31. In any event, through May and June, RVW Productions continued forward with the Loan. The Producer was barely involved in the Loan process, attending the initial meeting but having very little contact with Mr. Tarica or Forest Road thereafter.

32. As the Loan got close to closing, Mr. Tarica asked for significant information which was not normally requested for the type of Loan sought, dragging out the closing date of the Loan. RVW Productions provided all the documentation requested, but Forest Road continued to ask for more.

33. As the requests were unusual, RVW Productions looked around for other funding for the loan money. However, Mr. Tarica found out about Plaintiffs attempts to find another lender. He assured Plaintiffs that the Loan would close and instructed them not to contact other lenders.

34. However, more information was still requested. When Plaintiffs finally asked Mr. Tarica why Forest Road needed such information, Mr. Tarica stated that Mr. Levin and Mr. Discolo insisted that it be provided. He also specifically told Plaintiffs that Mr. Levin and Mr. Discolo made the ultimate decision on issuance of the Loan.

35. At that point, RVW Productions was at the point where very shortly it would not be able to make payroll. As such, Ms. Beckerman asked the Producer to contact Mr. Levin to find out why such information was needed.

36. Ms. Beckerman, the Producer, Mr. Levin and Mr. Discolo had a phone call at approximately 11:00 a.m. on June 28, 2018, the day the Loan was supposed to close. June 28, 2018 was significant because it was the day before payroll was due, and RVW Productions did not have the money to make the next day's payroll.

37. During that call, Mr. Levin said he had never heard of Forest Road, and Mr. Discolo said he had only met Mr. Tarica once.

38. Mr. Levin further suggested that the Levin Companies would take over and fund the loan money on better terms, since it was such a good deal. He also suggested that

one of the Producer's trusts fund the loan, but the Producer specifically declined to do so. Despite this, Mr. Levin called the wife of a trustee of the Producer's personal trust, telling her the Producer needed money.

39. On that phone call, Mr. Levin and Ms. Discolo asked for due diligence documentation so that the Levin Companies could fund the loan money, which was sent to them. They also asked for the Producer's personal account information, as the Producer agreed to personally guarantee the loan.

40. A few hours later, Mr. Discolo called and told Plaintiffs that Mr. Levin was going to fund the loan personally at 9%, a 1% discount from the terms of the Loan. He said he would wire the first $500,000 that day, and asked for wiring instructions.

41. After wire instructions were sent by RVW Productions to Robert Discolo on June 28, 2018, late that evening Mr. Levin called the Producer and said that Forest Road would not do the Loan because Mr. Tarica had an "unpleasant experience" with the Producer. Mr. Levin represented to the Producer that he attempted to convince Forest Road to do the Loan anyway.

42. When the Producer told Mr. Levin that Mr. Discolo had told RVW Productions that Mr. Levin himself was going to loan the money, Mr. Levin said he could not loan the money personally.

43. However, when Ms. Beckerman called Mr. Tarica and told him what Mr. Levin had said, Mr. Tarica strongly disputed Mr. Levin's account, telling Ms. Beckerman that he never said anything at all about the Producer. He told Ms. Beckerman that he would never say anything like that about the Producer, especially since he had barely talked to the Producer.

44. Mr. Tarica then again re-affirmed his commitment to the Loan, saying the Loan would close the next day, June 29, 2018. He also asked that Ms. Beckerman and the Producer not speak to Mr. Levin or Mr. Discolo going forward.

45. Finally, on June 29, 2018, Forest Road contacted RVW Productions with its attorneys on a recorded line and told RVW Productions that Forest Road could not do the Loan, even though they wanted to, but could not disclose to Plaintiffs the reason why they would not provide the Loan.

46. RVW Production's relationship with the Producer was then strained, and it was forced to remove the Producer as a producer and demand he not speak with anyone regarding the Loan going forward. After a response from the Producer's attorney and a promise from the Producer to help fix the issue, the Producer was eventually re-instated as a producer.

47. Though Plaintiffs did not realize it at the time, Defendants actions were intended to string along Plaintiffs such that they thought they were getting the Loan. Then, when they needed the funding most, Defendants pulled the Loan out from under Plaintiffs at the worst possible moment so that they could not get another loan before being severely damaged.

48. Defendants John Levin and Robert Discolo, due to personal animus against the Producer and disagreement with the perceived political ideology of the Movie, actively sought to use the Levin Companies' influence to sabotage the Loan through a series of falsehoods.

49. Mr. Tarica, influenced by Mr. Levin and Mr. Discolo, made additional false statements, all the while delaying Plaintiffs from taking further action to fund the Movie.

50. Defendants' conduct was specifically timed so as to inflict maximum damage to Plaintiffs and destroy the Movie, knowing that funding was needed by June 28, 2018.

51. As a direct and proximate result of the intentional acts of Defendants, the Plaintiffs were in fact severely damaged, and will continue to be damaged going forward.

52. Defendants' actions in delaying the production of the Movie meant that there was no funding to pay numerous employees and independent contractors working for of RVW Productions. Many, needing the money and able to leave due to the failure of RVW Productions to make payroll, left the production to pursue other opportunities. This exodus caused significant harm to the reputation of the Movie, as it was reported that the workers left the Movie because of its content.

53. The delay in funding also cost Plaintiffs to lose appearances in the Movie by three prominent actors who were scheduled to shoot their scenes during the time period when RVW Productions did not have the funding to shoot. Due to their very busy schedules, the actors could not reschedule.

54. Further, the delay cost RVW Productions locations, including the Statue of Liberty and the Plaza, where Plaintiffs were scheduled to shoot during the time period in which they had no funding.

55. Additionally, the delays cost hundreds of thousands of dollars a day in hard costs.

56. The delay and apparent inability to obtain a tax credit loan caused RVW Productions to lose at least $1.5 million in equity investment, as well as hundreds of thousands of dollars in post-production financing.

10

57. All of these things resulted in bad publicity, which will hurt the Movie's chances of getting distribution. Further, delays in the ultimate release date could cost a significant additional loss of revenue, as its scheduled release date was strategically planned to maximize profit.

58. As such, Plaintiffs losses are in the millions, or tens of millions, of dollars, given that that the most recent comparable movie took in over $100 million at the box office.

**WHEREFORE,** Plaintiffs demands judgment in their favor against Defendants, jointly and severally, awarding it damages, including incidental and consequential damages, statutory penalties, attorneys' fees, punitive damages, plus interest, costs of suit, and for other such relief as the Court may deem just, equitable, and proper.

### COUNT ONE: TORTIOUS INTERFERENCE

59. Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs and incorporates the same by reference.

60. Defendant John Levin has recently made known his personal animus to the Producer, as well as his political opinions on the subject of the Movie.

61. Defendant Robert Discolo, Mr. Levin's partner, is like-mined. The Movie is perceived to take a view-point counter to that of Mr. Levin and Mr. Discolo.

62. Due to their personal political opinions and personal animus, Defendants John Levin and Robert Discolo used the influence of the Levin Companies to tortuously interfere with an economic opportunity, knowing failure to secure the Loan would be extremely harmful to the Movie.

63. After discovering the Loan, Defendants John Levin and Robert Discolo contacted Forest Road with the express purpose of killing the Loan an inflicting as much damage as possible to Plaintiffs.

64. Defendants John Levin and Robert Discolo told a series of misrepresentations to Plaintiffs, Mr. Tarica and Forest Road for the express purpose of harming Plaintiffs and restraining trade.

65. As a direct and proximate result of Defendants John Levin, Robert Discolo and the Levin Companies' tortious interference, Plaintiffs lost the Loan, its relationship with Forest Road, and economic opportunity, and as such were severely damaged.

**WHEREFORE,** Plaintiffs demand judgment in their favor against Defendants John Levin, Robert Discolo and the Levin Companies, jointly and severally, awarding them damages, including incidental and consequential damages, statutory penalties, attorneys' fees, punitive damages, plus interest, costs of suit, and for other such relief as the Court may deem just, equitable, and proper.

## COUNT TWO: FRAUD

66. Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs and incorporates the same by reference.

67. Defendants John Levin and Robert Discolo told Plaintiffs a series of misrepresentations regarding the Levin Companies and John Levin's status with Forest Road as well as their ability to facilitate the closing of the Loan or an alternative loan as discussed above.

68. Defendants John Levin and Robert Discolo intentionally made those misrepresentations to Plaintiffs with the intent that Plaintiffs would rely on them.

12

69. Such misrepresentations were told to Plaintiffs on June 28, 2018 and June 29, 2018. Misrepresentations included that they would help facilitate the closing of the Loan; that neither John Levin, Robert Discolo, nor the Levin Companies were investors in Forest Road; that Forest Road would not close on the Loan because of its "unpleasant experience" with the Producer; that the Levin Companies would fund the loan monies; and that John Levin would fund the loan monies.

70. Plaintiffs, relying on these misrepresentations, allowed Defendants John Levin and Robert Discolo to remain involved in the loan process, and did not seek other alternative funding, to their detriment. Additionally, Plaintiffs, relying on such misrepresentations, gave John Levin, Robert Discolo, and the Levin Companies confidential information to their detriment.

71. Defendant John Levin also made intentional misrepresentations about his interest in funding the Movie on April 7, 2018. Plaintiffs, relying on those misrepresentations, gave Mr. Levin confidential information to their detriment.

72. Further, Defendant Zachary Tarica made a series of misrepresentations in May and June of 2018 to RVW Productions, including re-affirming that the Loan would close as promised, up until he told RVW Productions on or about June 29, 2018 that Forest Road would not loan the money to RVW Productions. These misrepresentations included specific instructions not to seek additional funding, with the threat that doing so would negatively affect their ability to close the Loan.

73. RVW Productions, relying on those misrepresentations, did not seek alternative funding, to its detriment.

74. Defendants' actions, as described above, are also a violation of the Federal Trade Commission Act, New York General Business Law § 349 and New York City Administrative Code § 20-700.

75. As a direct and proximate result of Defendants' fraud, Plaintiffs were damaged.

**WHEREFORE,** Plaintiffs demands judgment in their favor against Defendants, jointly and severally, awarding them damages, including incidental and consequential damages, statutory penalties, attorneys' fees, punitive damages, plus interest, costs of suit, and for other such relief as the Court may deem just, equitable, and proper.

## COUNT THREE: BREACH OF CONTRACT

76. Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs and incorporate the same by reference.

77. RVW Productions and Defendant Forest Road agreed to the terms of the Loan.

78. However, for the reasons articulated above, Defendants Zachary Tarica and Forest Road refused to honor their agreement to loan RVW Productions money for the Movie.

79. Defendant Forest Road's actions constitute breach of contract.

80. As a direct and proximate result of Defendant Forest Road's breach of contract, Plaintiffs were damaged.

**WHEREFORE,** Plaintiffs demands judgment in their favor against Defendants Zachary Tarica and Forest Road, jointly and severally, awarding them damages, including incidental and consequential damages, statutory penalties, attorneys' fees, punitive

damages, plus interest, costs of suit, and for other such relief as the Court may deem just, equitable, and proper.

### COUNT FOUR: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

81. Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs and incorporate the same by reference.

82. Defendants Zachary Tarica and Forest Road, by their actions as described above, breached the covenant of good faith and fair dealing.

83. As a direct and proximate result of Defendants Zachary Tarica and Forest Road's breach of the covenant of good faith and fair dealing, Plaintiffs suffered damages.

**WHEREFORE,** Plaintiffs demands judgment in their favor against Defendants Zachary Tarica and Forest Road, jointly and severally, awarding them damages, including incidental and consequential damages, statutory penalties, attorneys' fees, punitive damages, plus interest, costs of suit, and for other such relief as the Court may deem just, equitable, and proper.

### COUNT FIVE: MISREPRESENTATION

84. Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs and incorporate the same by reference.

85. Defendants made a number of fraudulent misrepresentations, as described in detail above.

86. As a direct and proximate result of the misrepresentations described above, Plaintiffs have suffered damages.

**WHEREFORE,** Plaintiffs demands judgment in their favor against Defendants, jointly and severally, awarding them damages, including incidental and consequential

damages, statutory penalties, attorneys' fees, punitive damages, plus interest, costs of suit, and for other such relief as the Court may deem just, equitable, and proper.

## COUNT SIX: CIVIL CONSPIRACY

87. Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs and incorporate the same by reference.

88. Defendants, each and every one of them, did conspire, act in concert together, and agree among themselves, to cause injury and damage to and commit unlawful acts against Plaintiffs, namely: to pull funding of the Movie at the last possible moment with the express purpose of inflicting maximum harm to Plaintiffs and the Movie as described above.

89. Each of the Defendants understood the objectives of the conspiracy scheme and accepted them, and agreed, implicitly or explicitly, to each do his or her part to further them.

90. The conspiracy included knowledge and agreement to cause damage to Plaintiffs, without cause.

91. By reason of the foregoing, and as a direct and proximate result of the conspiracy of and the actions of Defendants as described above, Plaintiffs have suffered damages.

**WHEREFORE,** Plaintiffs demands judgment in their favor against Defendants, jointly and severally, awarding them damages, including incidental and consequential damages, statutory penalties, attorneys' fees, punitive damages, plus interest, costs of suit, and for other such relief as the Court may deem just, equitable, and proper.

                                                **SMITH + SCHWARTZSTEIN LLC**
                                                *Attorneys for Plaintiffs*

                                                By: _____
Dated: August 22, 2018                               Andrew B. Smith, Esq.